251873. Council, good morning. Good morning. May it please the Court, my name is LaDonna Lesher and I represent the Plaintiff Appellant, Kalanisa Wan. Ms. Wan seeks a partial vacatur of an order from the United States District Court, Eastern District of New York that granted summary judgment to Defendant Amazon and dismissed her first cause of action alleging that Amazon violated the New York City Human Rights Law by discriminating against Wan based on her status as a caregiver. Wan's appeal should be granted in its entirety because Wan met her burden under the New York City Human Rights Law. She demonstrated that Amazon treated her less well and that she had inferior terms, conditions, and privileges of employment. So let me stop you there. And I understand and I've come to understand over 15 years that the New York City Human Rights Law is a very expansive law, very protective of employee rights. But Section 8107 of the Human Rights Law makes it an unlawful discriminatory practice for an employer because of a caregiver status of any person to discriminate against such person in terms, conditions. What does because of mean under that Human Rights Law? What does that term mean? Because of her status as a caregiver, it's a protected group that the New York City Council sought to include in the protections of the New York City Human Rights Law, which, as Your Honor mentioned, is broad and it's a remedial statute. And the legislative history behind the statute shows that the City Council was concerned that caregivers were suffering discrimination, particularly in their employment. And particularly as you agree that there's got to be a causal nexus. In other words, that the discriminatory act, whatever it might be, has got to be caused by the fact that someone fits a particular protected characteristic caregiver status here. Because I'm trying to differentiate that and treat it less well there. Well, because it's a broad remedial statute, and as Your Honor mentioned, it's to be interpreted more broadly than its federal and state counterparts. I understand that. Just help me just unpackage the following. I can be treated less well than you, but it's not because of my gender or my race. It's because of something else. I'm just treated less well. So what is because of? What is that term doing? In this particular situation, it's because of their caregiving duties. So in this situation, Ms. Wan worked for Amazon and at the time was a single parent of a seven-year-old son who she had sold custody of. She had requested a schedule modification, minor schedule modification to arrive 15 minutes later than her scheduled start time and to leave work 15 minutes earlier than her scheduled end time so that she could pick up her son from school. Why isn't it, and I think I know where you're going, but if I'm wrong, you'll correct me, I'm sure. Why isn't it, in this case, because she is not seeking an educational benefit as opposed to because she's a caregiver? Because interpreting the statute that way in Wan's situation would render the adding of caregivers to the protection of the New York City human rights law meaningless. If I'm looking at the legislative history, the legislature was very... So let's say the following, and I'm just going to use race. So let's say that I want to benefit from this, but there are a bunch of people who actually benefit from this flexible time policy that Amazon has in place who are of different races, including, by the way, my race. There are black people, white people, and so on. How could you possibly under those, how could I possibly under those circumstances say, well, that's discriminating against me because of my race? If you were treated less well, as Ms. Wan was treated less well, and it was because of... No, no, no, no, but if it's a basket of people, right? Let's take this case. Let's say that, and we don't know, but if it's a basket of people who are seeking education, and some of them are caregivers, some of them are not, but all of them who seek an education, fit the policy, they're fine, and I'm just a caregiver who is not trying to get an education, not trying to get an education. Tell me how that, where is the causal nexus to that? Because the point of adding caregivers to the statute was to protect them when they needed that protection for their caregiving duties, and in this situation, Ms. Wan was denied the same type of schedule request that Amazon decided, made a conscious decision it was going to provide to other employees for non-caregiving reasons, but that it denied to Ms. Wan simply because she needed it for caregiving. So that would be, you give the same response then to Amazon's statement that it would have granted Wan flexible scheduling if she were also a student? Correct. If she, if Ms. Wan had, Amazon admits that it would have granted the schedule request for Ms. Wan if she sought it for herself, but Amazon acknowledges and it admits that it would, the reason it denied it was simply because she needed it for her caregiving duties, and if you look at the legislative history, the strong legislative history, and the testimony that went into deciding the protections that would be afforded to caregivers, they specifically mentioned minor schedule adjustments as being something that caregivers had suffered discrimination on in their employment. Well, is there any evidence of a specific individual, another employee who is similarly situated who received the scheduling request that Ms. Wan asked for? Yes. In the record it shows in the request that we had for admissions, Amazon admitted that it has provided that type of scheduling request for non-caregiving duties to other employees, and that is on page 603 of the record, and 605. It actually goes from 601 to 605. If I recall what you're talking about, that's at a policy level though. I'm wondering if there were any specific individuals who were identified as similarly situated and received the accommodation that Ms. Wan asked for. They specifically admitted that there was at least one other employee that received that schedule modification, that type of schedule modification, that Ms. Wan had requested, but it was for non-caregiving duties. It was for that person to be able to attend school. What page would you point to? That is on the record at A605, and it was A605, and that was an admission that was a response to a request for admissions that was served on the parties. That is at the policy level. I mean, obviously, I think that they are admitting. If you do not seek, if you're seeking the benefit of this policy for any reason, it's not a policy that, frankly, other than the fact that you go to school, you don't get the benefit of the policy. I think what you're saying is that that policy itself is discriminatory, just categorically under the human rights law, and that it should have devised a policy that says what? Well, if they're going to make the conscious decision to have that policy and offer those types of benefits to employees for non-caregiving reasons, then they need to offer it also to employees for caregiving reasons, as the statute requires. Well, but the statute also protects people who fit other categories, so it could say, I'm just kidding, all European Americans. So if you're a white, we're going to give it to you as well. And then the statute or the policy would not, would be rendered meaningless almost, because it would be so capacious. I'm just trying to understand. Again, I'm sympathetic. I'm just trying to understand what you're saying. Well, I would respectfully submit that legislative history is key in this in showing, and also the guidance from the New York City Commission on Human Rights, which is charged with enforcing and administering the statute. They have said that employers are not required to provide reasonable accommodations for caregiving duties, but specifically, they specifically say that if an employer is going to offer a benefit of employment like this type of policy, and they specifically refer to a minor schedule adjustment for non-caregiving duties, then they have to offer that same benefit to caregivers for caregiving duties, because otherwise it would be being treated less well. And I understand my time is up, but I just want to point out to a couple of examples that were given. One, in the commission's guidance, they referred to an employer who, I mean, that had given an accommodation, a schedule adjustment to an individual who was training for a marathon, but denied it to another employee who was needed time to come in late in order to take her husband to chemotherapy sessions. And the commission said that that was discrimination and illegal under the statute. There are other examples as well. And Amazon also has in its schedule, in its temporary schedule policy, adjustment policy, it also allows for religious observance for certain holidays. And this is different than its religious accommodation. So individuals can also apply for that type of temporary schedule adjustment. Now, if Amazon didn't have that policy at all, then we wouldn't be here today. But because Amazon made the conscious choice to offer schedule adjustments to certain employees for non-caregiving reasons, it's discrimination. So just to hone in on this case, so Amazon, as I understand the response, that the specific arrangement that your client sought, which is altering shift start and end times by working through paid breaks while maintaining full pay, I think, was not the sort of scheduled change that Amazon offered to any similarly situated person for any reason. What's your response to that? First of all, they didn't argue that below. What's your response to that? There is absolutely no evidence in the record to support that. First of all, they admit that what the record shows is that they admit that they would have granted Juan's request had she made it for herself and not to be able to take care of her child. So already they've said that they've acknowledged they would have granted the request. Secondly, there's absolutely nothing in the record that shows that Juan was demanding difference to get more in compensation. She actually offered to forego her two 15-minute breaks because she was not satisfied with what she sought to anyone. And I know your first answer is, well, there's no, they didn't argue that, but that's what they're saying. Right, but there's nothing in the record to support that because they said that they would have granted it if she had made the request for herself. And the record also shows that the minor schedule adjustment that she requested is the exact type of schedule adjustment that they show in their temporary schedule adjustment guidelines. It says that employees can apply to have slight modifications to their start and end times for their shifts, which is exactly what she requested. You have preserved three minutes for rebuttal. Yes. So we'll hear you then. We'll hear from your friend on the other side, Mr. Richmond. Thank you. Thank you. Thank you, Your Honors. May it please the Court. Your Honor, I'd like to start where I think your questions were going, and that's what the statute. Well, my questions weren't going anywhere. I was just asking questions. So I'll focus on the because of language in the statute. And I think that this is important, and I think that this is causal, as Your Honor has mentioned. So the question here, and I turn to the same page my friend does. So Appendix 91, Paragraph 35. This is where it's admitted that Amazon would have granted a scheduling accommodation to Ms. Wan had Ms. Wan met the criteria of Amazon's temporary schedule adjustment policy. And I think that resolves this case under because of. So take because of. Let's switch Ms. Wan's status. Let's pretend for a second that she's not a caregiver. She has no caregiving responsibilities. She makes the request consistent with Amazon policy for the reasons there that qualifies for everything. That request is granted. Now let's switch it back. Let's assume Ms. Wan is a caregiver. She has the status, and the statute, 8107, focuses on status. It's because of status. So assume she has the status of a caregiver. She makes the same request to Amazon and says, I would like a schedule accommodation and checks all the boxes in Amazon's facially neutral policy. It is admitted, they admit, that that request would be granted. I think that is enough, Your Honors, to resolve this case on because of. Going further, Your Honors, I think there is a, even if you dig on to the particulars of what she asked for, the particulars of what she asked for deviated from any schedule adjustment Amazon offers anyone for any reason. And I think two documents prove this. So it's Ms. Wan's 56.1 statement. This is at Appendix 97, 98. And then it's Amazon's temporary schedule adjustment policy. This is at Sealed Appendix 14 to 16. Hold on. 14, 16? Yes. Okay. And there are three criteria that I think show why Ms. Wan's request is fundamentally different from anything Amazon offers. So first is duration. If you look at what Ms. Wan requested, so this is paragraph 60 of her statement, she requested a schedule adjustment. We're skipping around here. Okay. Yes. There are two documents I would look at, Your Honor. I would look at Appendix — I've got this, and then I've got paragraph 60. Exactly. So paragraph 60, she said that she requested from day one, she told HR that she would need to change her schedule when her son started school. He was then 7 years old. There's no end date in that request at all. And I would compare that, Your Honors, to Amazon's temporary schedule adjustment policy. That is entirely based — everything is based around end dates and around limits. So the school adjustment policy concerns an employee's own courses. That's limited by semester, by quarter. You must put in requests two weeks before that, and it's subject to various limitations and exceptions. And then if you look at hardships and you look at religious adjustments, those are based by instance or by year, depending on which one you're talking to. So you're saying — you're suggesting that by virtue of the fact that she placed no limitation on her request, as indicated in paragraph 60, she could not have satisfied the requirements of the — was it the temporary hardship? Of any of the — Of any of them. Okay. Of any of the grounds on which — Any of the adjustments. Exactly, Your Honor. The school hardship. Exactly. And that's just one ground. So second ground, I would say, is the mechanism, so what she requested. And here I would look at paragraphs 65 and 66 of her statement. This is where she said that her request consisted of an offer to trade her two paid 15-minute breaks in exchange for leaving early and arriving late so she would — and If you compare that request to Amazon's temporary schedule adjustment policy, that arrangement is not available to anybody for any reason. And, Your Honors, I would go further. In discovery, discovery revealed no example anywhere of anyone working through their break. In her deposition, Ms. Wan was asked, have you ever seen someone work through her break? Her answer was, I don't know. So that is appendix 255. Your friend pointed to your response to her request for admission on page 605. I guess your — it sounds like what you're speaking to now is saying, yeah, but that was broader. That was any kind of a schedule accommodation. The one that she's asking for here is very different. Exactly, Your Honor. The admission there is Amazon has and would grant a schedule accommodation in accordance with Amazon's policy. So if someone comes — and, again, it's admitted that if Ms. Wan comes and says, I'm a caregiver. I would like to attend my own college course. I have a temporary hardship. I have a religious observance. Whatever it is, whatever — Within the time limitation. Right, exactly. It checks every box within the policy. It is undisputed that Amazon would grant that, whether she has the status of a caregiver or not. But that's only two. Well, so far we've only talked about two of, I think, the kind of fundamental core differences in what she asked for versus what is available to anyone. And the third is just eligibility. So this is the reason for it. Amazon's policy is to provide accommodations for certain things. Ms. Wan's request was outside of those things. And I think what she's really asking for is an accommodation. This really is not a discrimination claim. So kind of the difference between the two of them, I think this is important, an accommodation claim is asking the employer to bend its policies, to alter its existing policies to accommodate the need of the plaintiff. Compare that to a discrimination claim. A discrimination claim is saying that there's a benefit that's offered to others, but it's denied to me because of — I mean, there is a religious accommodation element to this, is that right? There is a religious accommodation, yes. And so why not a caregiver accommodation? Is that entirely up to the employer? Well, this is, I think, gets to a point about the overbreath of her theory. So religious accommodation is required by New York City law. And there are other accommodations that are required by New York City law. So if plaintiff is right that by providing any accommodation for any reason or any schedule accommodation for any reason, you are therefore required to provide one for every protected characteristic on the discrimination statute, well — So you would agree that if the New York City human rights law provided for caregiver accommodation, then that would be an easy case? A hundred percent, Your Honor. And I would go to the legislative history, and this is recounted in the district court opinion. So the first draft of this law, this counsel bill, actually included a section on accommodation for caregiver. It actually had a clause that would have required companies to enable a caregiver to perform their caregiving function and to work, and it required a reasonable accommodation. That was struck from the final counsel bill. And I would point out that was struck even after the testimony that my friend cites in her brief. So if you look at the Deena Adams testimony, that was before the counsel ended up striking the accommodations provision. Would you agree, Mr. Richman, that the New York City human rights law is extremely expensive? I agree, Your Honor. It's expensive, but it does have limits, and those limits are on the plain text. And I would point out further that the commission, I think, agrees with us. So if you look at what the Human Rights Commission has said, they've said two things that I think are important. One, there is no requirement to provide accommodations for caregivers. I think everyone agrees on that as a general matter. And then, two, they've talked about what could be discrimination. So, A, they refer to the same benefit. You have to offer the same benefit to one person and deny it to another. And for the reasons that I've discussed, I don't think you have her request, I don't think is the same benefit that anyone else has received. And going beyond that, Your Honors, I would look at Appendix Page 629. So this is the Human Rights Commission. You're making me work here, Mr. Richman. This is the Human Rights Commission's release when this legislation was enacted, and they specifically say that it does not require, quote, special accommodations to caregivers outside the scope of company policy. That is what the Human Rights Commission, how it interprets this. And I think that's exactly consistent with Amazon's position. Ms. Wan, again, it's undisputed, would have received any benefit that Amazon actually offers. She could have showed up. Appendix 91, Paragraph 35, what I started with, she could have showed up and said, I'm a caregiver, I would like the following benefits offered in Amazon's policy, and it is undisputed that Amazon would have granted that to her. And for those reasons, Your Honor, I'm going to ask you a question. So if there's a question about this, about whether when this law was passed by the City Council and the Mayor and so on, it would apply to or prohibit as a matter of discrimination, frankly, sort of the policy, but in this case the denial of Wan's request, what should we do? In other words, should we, for example, solicit an amicus brief from the city attorney? Sounds like you're very confident. Should we certify the question to the New York Court of Appeals, understanding that that engages a bunch of machinery? But it's, you know, in a sense a little hard for us to deal with this. And I'm going to complicate your answer a little bit. Is there any law on this? So, Your Honor, just to start, I don't think that Your Honors need to certify a question or to solicit an amicus brief. I think the answer is because New York law, I think, is clear on this based on the plain text of the statute and, frankly, based on the guidance that has been issued. I think all of that guidance aligns with what we're saying. Now, in terms of law, the law is a little sparse on this, but I would point to her. The reason I ask that is that is usually a reason, unless we are highly confident for us to ask our friends down the street, what's the answer? I think this Court can be highly confident based on the text. Because of means in the discrimination context, it requires a causal connection. I think Your Honor's questions pointed that out. And you could look at precedent more broadly. There's no reason to suspect that New York was using the or New York City was using the phrase because of different than virtually any other discrimination statute. But even, Your Honor, looking to the law, I would look to her lead case. So she cites Chaplin, and this is a New York trial court decision. But I think this gets to the distinction that I'm talking about. There the employer offered, and the Court focused on this, and this was Westlaw page star 8 or 9. And what the Court said is the employer offers ad hoc policy, ad hoc schedule adjustments. It is case by case. And there they had examples of everything. They had dance class examples, divorce examples. In fact, in that case, the employer offered an accommodation only to female employees. And the employer on the record said that he did that because that accommodation is available to, quote, moms. In Chaplin, the dad, a father, sued and said, I should have the same flexible scheduling accommodation. And the Court allowed that to proceed, but allowed it to proceed because the denial changed based on his status. The fact that he was a male seeking accommodations. Let me ask you a slightly related, slightly different question. So it's Judge Gariffis, correct? Judge Gariffis. Judge Gariffis, yes. Judge Gariffis, a wonderful judge, but he, I think my reading is that he did not defer to the legislative history. He didn't really consider it. And I don't know, but I sense that that is probably a violation of New York law somewhere. Is that right, that he decided not to, he declined to really look at the legislative history? I don't think that's right for two reasons. So first, factually, I think Judge Gariffis did look at the legislative history specifically. So he recounted the fact that the original bill had the proposal or had the language for a reason. He considered it, but then he declined to defer to it. So what he declined to defer to was actually some of the guidance documents we've been talking about. Not even guidance. The press releases from the. That's what I'm referring to. Right, okay. So on that, I don't think he is wrong, and I don't think it matters. So first, on him not being wrong, the New York Court of Appeals has said, so I point the Court to Wang v. James as one example, that the courts do not have to defer, need not defer on a question of law. The examples that Ms. Wan points to that involve deference involve some type of application of agency expertise, and it's a mix of facts and law. Here, it's not. We're talking about what does the text mean, divorced from fact, and I think that there is no requirement. That's what you rely on. I'm sorry? That's what you rely on. Yes. And then second, I would say it doesn't matter, because if Your Honors look to any of the guidance she cites, I think all of that guidance supports our position. All of it says there is no requirement to provide an accommodation for care. Thank you very much. Thank you, Your Honor. Thank you, Your Honor. A couple of things that I'd like to point out that my adversary referred to. One, they said that, oh, if Ms. Wan had applied for a schedule accommodation that fit within their policy for caregiving, that they would have granted it. That's completely untrue. I'd like to point the Court to Appendix Page 29, where in their Rule 56.  You guys are making me. Sorry. I'll go back and forth.  29, all right? In Amazon's Rule 56.1 statement, they specifically say, Amazon does not offer scheduling accommodations for child care obligations. That proves the point that because this request was for child care or for caregiving, that that's the reason that Amazon denied it. That's the sole reason that they denied it. And there's absolutely no evidence in the record that shows. That's an answer to a specific question. If they've been asked, you know, do you provide an accommodation, first, you're not really, I think, making an accommodation claim. Right here, what's in front of us is a discrimination claim. But, you know, do you provide an accommodation for any other category? They would have said, no. I mean, the accommodation is for those specified in this sealed appendix. Well, the temporary schedule adjustment policy offers certain schedule adjustments, yes, for individuals, certain employees, if they want to pursue their own education. But that's the part that's discriminatory against Ms. Wan because she wanted that same schedule adjustment for caregiving duties. And that's exactly what the legislature has said is discriminatory. I think if she had had a, some, she wanted some educational benefit and to take off some amount of time to go to school, they would not have discriminated against her. They would have accepted that and allowed her to do it, even though she was a caregiver. So how is that caregiver discrimination? Because it is. Unless you're talking to me that the policy, well, how is that caregiver discrimination? Offering that benefit to Ms. Wan for herself renders adding caregiver protection to the statute totally meaningless because they wouldn't be denying her any benefit of her caregiving. Instead, they. Why don't you really, isn't this really about asking for an accommodation? So why don't you go, I'm just asking a question. Why wouldn't, you know, I'm going, wonderful brief by a better balance with these other amici, but why don't you ask the New York City Council to change the law to allow for caregiver accommodation? Well, the New York City. Would that be much clearer? Well, first of all, Ms. Wan was very clear that she was never asking for an accommodation and that she recognized that the New York City human rights law didn't offer accommodations to caregivers the same way it may offer them, for example, for disabilities. But even though the law does not afford for accommodations, it is specifically looking at the guidance from the agencies and looking at the legislative history, it says that the purpose behind adding caregivers to those protections was because they had suffered discrimination in asking for schedule adjustments. And even the guidance that Mr. Richman had pointed to on the appendix at page 629 says, even though it says that employers are not required to make special accommodations for caregivers, right underneath that it says that rather the law requires employers to provide employees leave time and workplace flexibility equally. Equally. That's all Ms. Wan is asking for. She's asking for workplace flexibility equally. And, again, the New York City Commission on Human Rights issued the same type of statement in saying that employers aren't required to provide accommodations the same way they're provided to people. You heard my questions to your friend. You know, you think you're right. Obviously he thinks he's right. Is there anything wrong with asking the New York City, I guess the Corporation Council of New York City, for its views of the New York Court of Appeals? I would actually agree that I think that the Court should certify the question to the New York State Court of Appeals. And I say that because there is some case law on this. There have been a few cases that are in the lower courts, and I would respectfully submit that this Court is required to follow them because this is an interpretation of a state law. And I would also say that these courts have upheld claims for caregiver discrimination in situations just like Ms. Wan's. Mr. Richman's distinction of chaplain is incorrect. The court did not uphold the caregiver discrimination claim there because it was gender. There were some gender claims in that. That's actually my firm's case, so I'm intimately familiar with it. And in that case, the actual caregiver claim was upheld, and summary judgment was denied because of the inequality of these schedule adjustments. There were employees. Thank you very much. Okay. Thank you. Very helpful. We'll reserve the decision, obviously.